# CHARLESTON.

DAVIS TRUST CO. v. PRICE *et als.*

Submitted February 15, 1916.   Decided February 29, 1916.

1. WILLS—*Construction*—"*All*".

   Testator's sister, to whom he had bequeathed a share of his estate, died, and he thereupon made a codicil, giving her share to her three children in the following manner: "I wish her share would be distributed among her three children, Elise, Harry and Catherine Price and that their share will be held in escrow in the Trust Co. of W. Va. at Elkins, W. Va. until *all* of them shall have reached their majority." *Held:* By "all" testator meant "each", and each child, on arriving at twenty-one years of age, was entitled to receive its share.   (p. 679).

2. ESTOPPEL—*Trustee*—*Guardian.*

   The trustee of a fund created by will, who mistakes his character for that of guardian, and settles his accounts as such, from year to year, is not thereby estopped from setting up his true character as trustee and accounting for the fund in his hands as such.   (p. 681).

Appeal from Circuit Court, Mineral County.

Suit by the Davis Trust Company against Elise D. Price and others.  From decree for defendants, plaintiff appeals.

*Affirmed.*

*William MacDonald,* for appellant.

*Charles N. Finnell, Frank C. Reynolds, Walter C. Capper* and *Benjamin A. Richmond,* for appellees.

WILLIAMS, PRESIDENT:

The only question involved in this suit is the proper construction to be placed upon a certain clause in a codicil to the will of Harry G. Buxton, deceased. Between the time of making his will and the codicil, one of the beneficiaries, Mrs. Blanche Price, died, and he provided by his codicil that the share of his estate intended for her should go to her three children, Elise, Harry and Catherine Price. After making some modifications of his will, which are not here involved, and referring to the death of his sister Mrs. Price, he provided for her three children as follows: "The latter (Mrs. Price) having died since the execution of the will above referred to I wish her share would be distributed among her three children, Elise, Harry and Catherine Price and that their share will he held in escrow in the Trust Co. of W. Va. at Elkins, W. Va. until *all* of them shall have reached their majority."

After Elise Price, the oldest of the three children, arrived at age, she demanded her share of the funds and threatened to sue plaintiff for it, if it was not paid. Thereupon plaintiff, which is the same corporation as the Trust Co. of W. Va. mentioned in the will, the name of the corporation only being changed, brought this suit to have judicially determined the question whether each one of the three children was entitled to receive his or her share of the fund on arriving at age, or whether the testator intended the fund should not be distributed until the youngest arrived at age. The circuit court held the former to be the true construction, and plaintiff has appealed.

There is nothing in the codicil, apart from the language above quoted, to indicate a purpose of the testator to postpone the enjoyment of its estate, by any child, beyond the time it should come of age. The bequest was to the children severally. The share of the testator's deceased sister was to "be *distributed* among her three children." The share of each vested at the death of the testator, and there was no survivorship among them. On the death of Elise, which has occurred since this suit was brought, her share descended to her distributees. We think the testator meant to use the

word "all", in his codicil, distributively rather than collectively. We know the word is sometimes, though improperly, used in that sense. That testator was not entirely accurate in the use of language is shown by his use of the term *escrow,* which the context shows he could not have intended in the sense in which it is ordinarily understood and applied. Each child took a vested estate; it is only the enjoyment, and not the vesting of the bequest, that is postponed. The death of a child, under age, would not defeat the gift; it would pass to its distributees, the same as if it had died after it became of age. We think testator evidently intended the word "all" to have the sense of the word "each".

*Sherburne* v. *Sischo,* 143 Mass. 329, is a case in point. There the testator gave the residue of his estate to his nephews and nieces, except A., in severalty, share and share alike, and directed his executors to pay to them one-half of their shares. Out of the other half he created a trust fund for their benefit, the income from which was to be equally divided among them during their lives; and, as to the principal of the trust fund, he provided as follows: "At the decease of either of the said nephews and nieces, I give and bequeath such one's half portion and interest on the trust fund to his or her legal heirs; and, at the decease of all my nephews and nieces, I give and bequeath the principal of said trust fund to their legal heirs, including A.'s heirs." The court held that the clause above quoted was not intended to cut down the gift made in the previous part of the will and the testator had evidently used the word "all" in the sense of "each" or "every one".

Likewise, the Court of Appeals of Kentucky, in the recent case of *Shaver's Arm'r* v. *Ewald's Ex'r,* 142 Ky. 472, 134 S. W. 906, held that the terms, "all the legatees," meant each of them. In that case testator left an estate worth between $2,000,000 and $3,000,000. By the third clause of his will he left legacies of $15,000 each, to a number of his sisters, and provided as follows: "The bequests in this third clause, however, are made on the express condition that all the legatees therein named shall accept these legacies in full and complete satisfaction of all claims or pretended

claims against myself, or my estate, or of any interest there-
in, of every kind and nature whatsoever.'' Four of the
legatees provided for in this clause filed petitions asking
that the legacies bequeathed to each of them be paid to them.
The circuit court sustained a demurrer to their petitions, on
the ground that five other legatees, provided for in the same
clause, had not signified their election to take under the will,
and that none of the legacies were payable, unless all the
legatees accepted on the terms provided in the will. The
decree of the lower court was reversed, the appellate court
holding that the word ''all'' was used in the sense of ''each''.
*Rockwell* v. *Swift*, 59 Conn. 289, is another case in point.

The court decreed plaintiff should account as trustee, to
the estate of Elise D. Price for her share, and not as guardian,
and this is cross-assigned as error. Counsel insist that plain-
tiff was appointed as guardian for the three children and
accepted the appointment as such, and that it is, therefore,
estopped to deny its liability in that capacity, and should be
required to settle as guardian rather than as trustee. The
character in which it holds the fund depends on the pro-
vision of Buxton's will. The will constitutes it a simple
trustee, to hold and protect the fund until the children arrive
at age. Harry Buxton died intestate as to a part of his
property, and the Price children inherited a portion of it,
as his heirs. They were entitled to the enjoyment of that
portion immediately. That part of the funds belonging to
the Price children also went into plaintiff's hands, and as
to it, plaintiff would have to account as guardian, if it has
not already done so. But the will expressly postponed the
enjoyment of their legacies until they became twenty-one
years old, and as to that they are not required to account as
guardian, but only as trustee. That plaintiff may have been
under a misapprehension as to its true relation to the Price
children respecting their several legacies, and may have
rendered annual statements to the county court of all the
funds in its hands, in the character of guardian, does not
estop it to show its true relation to so much of the fund as
represented the legacies, which, by the provisions of the will,
it held simply as trustee. No one has been prejudiced by
its action in respect to that fund, and hence there is no

occasion to apply the doctrine of estoppel.   *Koontz, Phillips & Stamm* v. *Mylius,* 77 W. Va. 499, 87 S. E. 851.

The decree is affirmed.

*Affirmed.*