Commonwealth *v.* Pierce, Appellant.

Argued May 4, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*R. Barclay Surrick,* Assistant Public Defender, for appellant.

*Philip J. O'Malley,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, September 19, 1973:
James A. Pierce was convicted by a jury in Delaware County of the crimes of murder in the second degree and conspiracy. The convictions stemmed from the

fatal shooting of Emanuel Hughes in the City of Chester. Post-trial motions were denied and a prison sentence of six to fifteen years was imposed on the murder conviction. Sentence was suspended on the conspiracy conviction. Pierce now appeals.

Although, the sufficiency of the evidence is not challenged, the record demonstrates the jury was warranted in finding the following facts which amply support the verdict.

On the night of November 28, 1970, Pierce who was a member of a group known as the "Graveyard Gang" heard that members of another gang were coming to a dance to be conducted at the Ruth Bennett Housing Project in Chester. Anticipating trouble, he picked up two rifles at the home of his sister; one a single shot which he gave to a companion, James L. Dochery, and the other a repeating rifle which he kept himself. About 9:30 p.m., Pierce and Dochery saw five boys walking across a field and approaching the Ruth Bennett Project. Pierce first fired three shots from his rifle at some street lights and when the "five boys" turned and started to run away from the project, Pierce aimed the gun in their direction and fired "wildly" into the group. One of the group, Emanuel Hughes, age fifteen years, was hit in the abdomen by a bullet and fatally wounded.

Pierce contends several errors occurred at trial which require a retrial.

Initially, it is argued two of the jurors in the case took notes during the trial and used the notes during the jury's deliberation. The facts, as they relate to this issue, are these: Subsequent to trial, one of the jurors in the case contacted defense counsel and stated two jurors had taken notes during the trial and brought the notes into the jury room. Counsel had the juror sign an affidavit to this effect and presented the affidavit to the trial court and requested a hearing on the issue. The court refused to hold the hearing.

Under the present Pennsylvania law, it is improper for a juror to take notes and use such notes in the jury room, and if the defendant can establish prejudice from such conduct he is entitled to a new trial. See generally, *Lancaster Redevelopment Authority Appeal*, 425 Pa. 36, 227 A. 2d 827 (1967); *Fisher v. Strader*, 399 Pa. 222, 160 A. 2d 203 (1960); *Thornton v. Weaber*, 380 Pa. 590, 112 A. 2d 344 (1955); and Pa. R. Crim. P. 1113. There is, however, another equally well established rule of law that a juror is not competent to testify as to what transpired in the jury room. In *Friedman v. Ralph Brothers, Inc.*, 314 Pa. 247, 171 A. 900 (1934), the court stated: "[W]e cannot accept the statement of jurors as to what transpired in the jury room as to the propriety or impropriety of a juror's conduct. Com. v. Bergdoll, 55 Pa. Superior Ct. 186; Com. v. Wilson, 19 Northampton 114. To do so, would destroy the security of all verdicts and go far toward weakening the efficacy of trial by jury, so well grounded in our system of jurisprudence. Jurors cannot impeach their own verdict. Their deliberations are secret and their inviolability must be closely guarded. Only in clear cases of improper conduct by jurors, evidenced by competent testimony, should a verdict, which is fully supported by the evidence, be set aside and a new trial granted." Id. at 249, 171 A. at 901. See *Wolfe v. Riggle*, 407 Pa. 172, 180 A. 2d 220 (1962). Thus, the affidavit of the juror here was not competent evidence to show that notes were used in the jury room. Since no competent evidence was asserted to support this complaint, the court properly refused to entertain the issue.

It is next urged the trial judge erred in refusing a submitted point for charge on the law of alibi. Cf. *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A. 2d 441 (1959).[1]

---

[1] The trial judge refused the point stating he had adequately covered the matter in his charge.

Assuming the above complaint is well taken, the record discloses it was not asserted in the motion for a new trial or urged upon the trial court at the time of argument on the motion. Under the circumstances, we will not reach the issue. As we stated in *Commonwealth v. Bittner*, 441 Pa. 216, 272 A. 2d 484 (1971) : "Although appellant raised the matter pretrial, the issue was not presented in the post-trial motions and the court en banc, consequently, had no opportunity to review and decide the question. We have long held that where the court below has not had proper opportunity to decide a question, we will not decide it on appeal. Cf. Commonwealth v. Myers, 439 Pa. 381, 266 A. 2d 756 (1970), and cases cited therein." Id, at 221, 272 A. 2d at 487.

The next assignment of error involves an alleged prejudicial remark by the district attorney during the trial. The record shows the following occurred during the questioning of a witness: "Defense Counsel: Do you know if Tony also called the hospital? District Attorney: I object. That is not relevant. The Court: What difference does that make whether he did or did not? District Attorney: He should have thought of that before he shot him. Defense Counsel: I ask for a Mistrial, Your Honor. The Court: Overruled. I will grant you an exception." Although we do not condone such a statement by the prosecuting attorney, we do not deem the incident sufficient to warrant a new trial. The remark was consistent with the evidence which had already been presented and did not add any new evidence to the trial, and was not of the nature to truly inflame or prejudice the jury or to have the unavoidable effect of prejudicing the jury to the extent that they would have a fixed bias in their minds, so they could not objectively weigh the evidence and render a true verdict. See *Commonwealth v. Toney*, 439 Pa. 173, 266 A. 2d 732 (1970) ; *Commonwealth v. Simon*, 432 Pa. 386, 248 A. 2d 289 (1968). Moreover, in his charge the

trial judge instructed the jury to disregard the remarks of counsel and decide the case only on the evidence. Cf. *Commonwealth v. Gordon*, 431 Pa. 512, 246 A. 2d 325 (1968).[2]

The last alleged trial error involves the admission of certain opinion testimony by a ballistics expert. These are the pertinent facts.

Following the occurrence, the police, through information received from Pierce, located and seized the rifles which were in the possession of Pierce and Dochery at the time of the shooting. A ballistics expert stated testing disclosed one of these rifles, a single shot .22 caliber rifle, had six lands and six grooves, and that the other, a "Mossburg" automatic .22 caliber rifle had eight lands and eight grooves. [It was undisputed at trial that the rifle in the possession of Pierce at the time involved was the "Mossburg."] The witness testified, while the bullet recovered from the body of the victim during the autopsy, was a .22 caliber rifle bullet with eight lands and eight grooves, he was not able to testify conclusively that this bullet was fired from the "Mossburg", because the striae on the bullet had been obliterated. However, he said the bullet was fired from a rifle with eight lands and eight grooves and he was, therefore, certain it was not shot from the single shot rifle with six lands and six grooves. Over objection, the witness was then permitted to say that in his opinion the bullet was fired from the "Mossburg." The ruling permitting this expression of opinion is urged as error. We are not so persuaded.

From the undisputed evidence, it is clear that only two rifles were present on the scene when Hughes was

---

[2] Appellant cites *Commonwealth v. Potter*, 445 Pa. 284, 285 A. 2d 492 (1971). However, *Potter* relates to the district attorney calling the defendant a liar, thus expressing his opinion on the credibility of the defendant. This is not the factual situation presently under consideration.

fatally shot; one a single shot rifle in the possession of Dochery, and the other an automatic rifle in the hands of Pierce. The expert witness testified he was "certain" the bullet which killed the victim was not fired from the single shot rifle, and Pierce's brief states this testimony presents "no problem." In view of this, the court certainly did not err in permitting the witness to express the challenged opinion. Moreover, the opinion expressed by the witness involved was not inadmissible merely because he was unable to state "conclusively" the bullet was fired by the "Mossburg." Cf. *Bialek v. Pittsburgh Brewing Co.*, 430 Pa. 176, 242 A. 2d 231 (1968); *Commonwealth v. Gockley*, 411 Pa. 437, 192 A. 2d 693 (1963); and *McCrosson v. Philadelphia Rapid Transit Co.*, 283 Pa. 492, 129 A. 568 (1925).

Judgment affirmed.

———

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree with the result reached by the majority. I desire, however, to emphasize that violation of Pa. R. Crim. P. 1113, precluding note-taking by jurors during the course of trial, must be raised at trial. Note-taking, like other trial errors, must be the subject of a timely objection in order to be preserved for appellate review. Post-trial discovery of, and objection to, trial errors does not comport with the procedural requirements of Rule 1113. Had an objection properly been raised at trial, the judge would have been able to correct the now asserted procedural error. No objection having been made at trial, petitioner is foreclosed from raising this issue here. *Commonwealth v. Paquette*, 451 Pa. 250, 301 A. 2d 837 (1973); *Commonwealth v. Agie*, 449 Pa. 187, 296 A. 2d 741 (1972); *Commonwealth v. Bittner*, 441 Pa. 216, 272 A. 2d 484 (1971).

CONCURRING OPINION BY MR. JUSTICE NIX:

I concur in the result reached by the Court today solely because the appellant has failed to specify the nature of the prejudice resulting from the alleged note-taking.